UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | | |
|---|---|---|
| JOHN F. HURLEY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | NO. 2:04-CV-277 PS |
| | ) | |
| M/V MAJESTIC STAR, her engines, boilers, | ) | |
| furniture, tackle and apparel; and MAJESTIC | ) | |
| STAR CASINO, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER**

John Hurley was employed by the Majestic Star Casino LLC (the "Casino"), a local riverboat casino, and claims he was cheated on overtime. The Third Amended Complaint currently before the Court is a binary attempt to collect those past due wages. On the one hand, Hurley brought this action seeking overtime wages from his employer, the owner of the casino, under the Fair Labor Standards Act (FLSA). On the other hand, invoking this Court's admiralty jurisdiction, he has brought an action *in rem* against the M/V Majestic Star (the "Vessel"), the physical boat on which he worked, by attempting to place a lien on the Vessel. This matter is before the Court on both the Vessel's and the Casino's separate Motions to Dismiss [Docs. 29, 37].[1] Because Hurley admits that he was not a seaman for the purposes of his maritime lien claim, the *in rem* case against the Vessel must be dismissed for failure to state claim but the action against the casino survives a motion to dismiss under the FLSA.

---

[1] The Court granted Hurley's Motion for Leave to Amend on January 25, 2005. Accordingly, while the Vessel's motion also opposed Hurley's attempt to amend the complaint, only the Motion to Dismiss is before the Court.

## I.  BACKGROUND

Plaintiff John F. Hurley (and the "class" of employees he purports to represent)[2] filed his Third Amended Complaint on January 26, 2005 naming the Vessel and the Casino as defendants. [Doc. 25].  Hurley asserts that while employed by the Casino to work aboard the Vessel, he worked in excess of 40 hours per week but was not compensated for those overtime hours at one and one-half times his regular wage.  The Casino admits that it employed Hurley and that it has an ownership interest in the Vessel.

Although the Third Amended Complaint is far from clear in its pleading, it appears as though Hurley purports to bring an action to enforce a maritime lien for the alleged overtime wages pursuant to the Maritime Lien Act (the "MLA"), 46 U.S.C. 31342(a)(2), and, separately, purports to bring an action for those same overtime wages pursuant to the Fair Labor Standards Act,  29 U.S.C. 201, et seq.

In the Complaint, Hurley alleges that he worked aboard the Vessel with the job title "able bodied seaman."  Nevertheless, Hurley also asserts that he was not "employed as a seaman, for purposes of their wage payments."  In support, Hurley alleges that "the vessel was moored virtually all of the time, plaintiffs did not perform services rendered aboard such vessel primarily as an aid in the operation of said vessel as a means of transportation, and they performed services of a nonmaritime nature substantially most of the time."  (Third Am. Cmp. at ¶ 3).

---

[2]This is not a class action under Fed. R. Civ. P. 23.  Rather, Hurley brought this action as a collective action under 29 U.S.C. § 216(b) which authorizes collective actions to enforce the provisions of the Fair Labor Standards Act, 29 U.S.C. §201, et seq.

## II. DISCUSSION

**A.     Standard of Review**

In ruling on a motion to dismiss pursuant to Rule 12(b)(6),[3] the Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  *Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 637 (7th Cir. 2004).  However, the court "will not strain to find inferences favorable to the plaintiffs which are not apparent on the face of this ... complaint."  *Coates v. Ill. State Bd. of Educ.*, 559 F.2d 445, 447 (7th Cir. 1977).  The purpose of a motion to dismiss is not to decide the merits of the challenged claims but to test the sufficiency of the complaint.  *Wieler v. Household Fin. Corp.*, 101 F.3d 519, 524 n.1 (7th Cir. 1996); *Pickrel v. City of Springfield, Ill.,* 45 F.3d 1115 (7th Cir.1995).  A court will grant a motion to dismiss only if it is impossible for the plaintiff to prevail under any set of facts that could be proven consistent with the allegations.  *Forseth v. Village of Sussex*, 199 F.3d 363, 368 (7th Cir. 2000).

**B.     Hurley's Claims**

As an initial matter, we note that it is difficult to discern the true claims at issue in this case.  Rather than clearly delineate which theory is applicable to which party, Hurley lumps all of the parties and all of the statutes together.  Accordingly, the Court is left to guess which

---

[3] Defendants purport to bring their Motions to Dismiss under both Rule 12(b)(1) and Rule 12(b)(6).  However, their briefing contains no argument with respect to 12(b)(1) jurisdictional issues.  Further, we note that any objection to jurisdiction would be limited to Hurley's MLA claims because the FLSA clearly presents a federal question squarely before this Court.  28 U.S.C. § 1331.  With respect to MLA claims, Courts routinely adjudge whether or not a maritime lien exists on the merits.  *See Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 2087 (11th Cir. 1991) (affirming District Court's finding of no lien after bench trial); *Winslow v. S/V Dancing Dolphin*, 273 F. Supp. 2d 669 (D. V.I. 2003).

3

theories are applicable to which defendants.

**1.      Hurley Has Not Stated A Claim For Relief With Respect To The Vessel**

We first address Hurley's claims against the Vessel.  Hurley purports to bring an action to enforce a preferred maritime lien pursuant to the MLA.  That is, he seeks to enforce a seaman's lien for wages against the Vessel.  Although the underlying basis of Hurley's overtime claim is unclear in the complaint, the Court will assume that he might make a claim under one of two theories.  First, Hurley might assert that he is entitled to statutory overtime under the FLSA which, in turn, entitles him to a lien on the vessel for those wages.  Second, Hurley might assert that his alleged entitlement to overtime wages has nothing to do with the FLSA, but rather, arises because he provided a "necessary" under the Maritime Lien Act.  (*See* Plf. Brief at 3).  Hurley cannot prevail on either theory.  Additionally, to the extent Hurley attempts to allege a straight FLSA claim directly against the Vessel itself, that claim would also fail because the Vessel was not Hurley's employer.

**a.      Hurley Cannot Be A Seamen For Purposes of the MLA, But Not For Purposes of the FLSA**

It first appears that Hurley's Third Amended Complaint attempts to bootstrap his FLSA claim onto his MLA claim.  Hurley argues that the FLSA affords him overtime wages.  He then asserts that because the FLSA gives him overtime wages, he has the right to secure those overtime wages against the Vessel in the form of a seamen's wage lien.  As we noted in our Order on the Vessel's First Motion to Dismiss [Doc. 20], there is an internal inconsistency in this claim because in order to be entitled to a maritime lien for wages, Hurley must be a "seaman," defined generally as "a master or a crewmember of a vessel in operation,"  26 U.S.C. § 30101; however, the FLSA exempts "any employee employed as a seaman" from its protections.  29

U.S.C. § 213(b)(6).  Although we initially concluded that this discrepancy was not entirely fatal to Hurley's complaint, upon further review, we find that Hurley cannot maintain both an overtime wage claim under the FLSA and a maritime lien.

As we previously noted, the Seventh Circuit has recently recognized that "the classification of an employee as a "seaman" under one statute or admiralty doctrine does not necessarily require that he be so classified under another one which might have a different purpose."  *Harkins v. Riverboat Servs. Inc.*, 385 F.3d 1099, 1103 (7th Cir. 2004).   The FLSA does not specifically define "seaman."  Nor does the MLA specifically define "seaman."  Accordingly, we turn to a review of the underlying purpose of both the maritime lien action and the seaman exemption to the FLSA to determine whether or not these two actions may coexist.  We find that they cannot.

The seaman's wage lien was originally created to protect those sailors whose lives were tied to the ships and the sea.  Indeed, "the protection of seamen was one of the principal reasons for the development of admiralty as a distinct branch of law."  THOMAS J. SCHOENBAUM, ADMIRALTY & MARITIME LAW 271 (4th ed. 2001).  Particularly, the courts noted that the work of the seamen was difficult, dangerous, and required long stays away from home.  *Id*.

Historically, the Courts have recognized that those people who provide services to vessels are "strangers" to those vessels and rely on the security of the ship in performing their work.  *Fathom Expeditions, Inc. v. M/T Gavrion*, 402 F. Supp. 390, 397 (M.D. Fla. 1975).  This makes sense given that seamen often found themselves in foreign ports wholly dependent upon the owner of the ship.  Of course, the owners themselves were usually not also in those foreign ports and, thus, it would be easy for an owner to renege on the sailor's wages – leaving the sailor

5

abandoned and destitute. The only security that the seaman had was the ship itself. The seaman's wage lien was created for just this purpose – to provide security to those whose services are essential to a ship and her voyage. *Payne v. S.S. Tropic Breeze*, 423 F.2d 236, 242 (1st Cir. 1970). Ultimately, the wage lien creates a dual purpose security device: allowing ships to move in commerce while not allowing them to escape their debts by sailing away. *Governor & Co. Bank of Scotland v. Sabay*, 211 F.3d 261, 267 (5th Cir. 2000). This historical purpose of the seaman's wage lien suggests that it cannot be invoked by those who are not seamen.

In contrast, the FLSA specifically exempts "seamen" from its protections. In *Harkins*, the Seventh Circuit reviewed the purpose of the FLSA's seaman's exception. They noted:

> The exemption recognizes that at sea, with a normal life impossible, working more than 40 hours a week is an appropriate work norm, as distinct from the situation in most ordinary employments where, because 40 hours is the norm, requiring the employer to pay time and a half for overtime encourages him to spread the work by hiring enough workers to minimize the need and resulting expense of overtime . . .

*Harkins*, 385 F. 3d at 1102. It is clear that the *Harkins* court recognized that the life of a "seaman" is different than the life of an ordinary employee. If, then, plaintiffs are entitled to overtime because they do not work at sea where working more than 40 hours is the norm, then they certainly are not exposed to the perils which gave rise to the creation of the seaman's wage lien.

Having reviewed the purpose of the MLA and the FLSA's seaman exemption, it is abundantly clear that the MLA is designed to protect seaman for the very same reasons that the FLSA exempts them. As the Seventh Circuit recently stated:

> when persons employed on a ship, even so atypical a one as an Indiana gambling boat, are classified as seamen for purposes of

6

> entitlement to the special employment benefits to which seamen . . .
> are entitled, a presumption arises that they are seamen under the
> FLSA as well.

*Id*. at 1103.  Thus, if one is a seaman, we presume that he takes the good with the bad: he gets the benefit of the Jones Act and the MLA, but gets exempted from the FLSA.

Here, Hurley's Third Amended Complaint is abundantly clear that Hurley has pled that he is *not* a seaman.  First, he pled "plaintiffs, although ostensibly seamen, were not 'employed as' seamen."  (3rd Am. Cmp. at ¶3).  Second, he asserted that he "did not perform services rendered aboard such vessel primarily as an aid in the operation of said vessel as a means of transportation . . . [he] performed services of a nonmaritime nature substantially most of the time." (*Id*.).  Third, he asserted that "the vessel was moored virtually all of the time."  (*Id*.).  We must take the allegations of Hurley's Third Amended Complaint as true. *Flannery*, 54 F.3d at 637.  That is, we take as true that Hurley was not "employed as a seaman" and that he performed services of a nonmaritime nature aboard a vessel that was virtually permanently moored.  As a result, we see no set of facts that would allow Hurley to assert a seaman's wage lien.  In sum, by attempting to take advantage of the protections of the FLSA, Hurley has, in effect, pled himself out of court on his maritime lien claim.

    **b.**  **There Is No Right to Overtime Under General Maritime Law Principles**

Even if Hurley were to assert that his claims against the Vessel had nothing to do with the FLSA (thereby removing the internal inconsistency in his Third Amended Complaint), he would not be able to state a claim to enforce a maritime lien.  This is because Hurley admits that he was properly paid his regular wages in full (3rd Am. Cmp. at ¶ 3), and nothing in the MLA entitles him to overtime wages. The MLA provides that "[e]xcept as provided in section (b) of

7

this section, a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . had a maritime lien on the vessel." 46 U.S.C. §31342. "'Necessaries' includes repairs, supplies, towage, and the use of dry dock or marine railway." 46 U.S.C. §31301 (4). In addition the MLA defines a preferred maritime lien as "a lien on a vessel . . . for wages of the crew of the vessel." 46 U.S.C. § 31301(5)(D).

Both parties agree that the MLA creates a substantive claim for seamen's wages. (Def. Brief at 4; Plf. Brief at 4)**.** Further, both parties agree that the MLA does not expressly create a claim for overtime wages. (Def. Brief at 4; Plf. Brief at 4). Nevertheless, Hurley argues that the MLA does create a claim for "necessaries" and that the hours he worked over 40 hours per week are compensable as such "necessaries."

Hurley has cited no case (nor are we aware of any) creating a right to overtime wages under general American admiralty law.[4] Nor has Hurley attached a contract between himself and any owner of the Vessel that entitles him to overtime wages. Thus, Hurley has done little more than conclude that the labor he undertook in excess of 40 hours is a "necessary" for purposes of the MLA (citing generally to the MLA). As Judge Moody aptly stated in his dismissal of a similar claim under Rule 12(b)(6), "to simply respond . . . with a general assertion that maritime law permits seaman [sic] to claim unpaid wages, is no response at all." *Superson*

---

[4] Seamen's wage liens have been upheld with respect to overtime pay where there is an independent basis for those overtime wages. *See, e.g.*, *Monteiro v. Sociedad Maritima San Nicolas, S.A.*, 280 F. 2d 568, 573 (2nd Cir. 1960) (upholding lien for overtime on ship of Liberian registry where Liberian law expressly provided for overtime); *Lakos v. Saliaris*, 116 F.2d 440 (4th Cir. 1940) (upholding lien for "war bonus" overtime to Greek sailors under Greek law).

*v. M/V Winstar*, No. 2:03cv188**,** slip op. at 14 (N.D. Ind. December 16, 2003).[5]  Accordingly, we see no reason to read an overtime provision into the MLA.

### c. Hurley Cannot Bring an FLSA Claim Action Against the Vessel

Finally, we note that Hurley could not bring an FLSA Claim directly against the Vessel because the Vessel is not an employer.  The FLSA provides:

> Except as otherwise provided in this section, no ***employer*** shall employ any of his employees . . . for a workweek longer than forty hours unless such employee received compensation for his employment in excess of the hours above specified at a rate not less than one and one-half times the regular rate at which he is employed.

29 U.S.C. § 207(1) (emphasis added).  The FLSA further defines "employer" as:

> any ***person*** acting directly or indirectly in the interest of an employer in relation to an employee and includes a public agency, but does not include any labor organization or anyone acting in the capacity of officer or agent of such labor organization.

29 U.S.C. §203(d) (emphasis added).  Finally, the FLSA defines a person as "an individual, partnership, association, corporation, business trust, legal representative, or any organized group of persons." 29 U.S.C. §203(a).

The FLSA clearly contemplates an *in personam* action – that is, an action brought against an entity, not a piece of property.  There is no provision in the FLSA definitions allowing a piece of property to be an employer.  Accordingly, it is clear that Hurley could not bring an FLSA claim directly against the vessel.

### 2. Hurley Cannot Bring An Action To Enforce A Maritime Lien Against The Casino

Hurley also cannot maintain a maritime lien against the Casino.  First, as described

---

[5]We note that Hurley's counsel in this matter was also Plaintiff's counsel in *Superson*.

above, Hurley has pled in his complaint that he is not a seaman. Second, even if he was properly a seaman, the MLA provides that a holder of a maritime lien "may bring a civil action *in rem* to enforce the lien." 46 U.S.C.A. § 31342 (emphasis added). Supplemental Rule C, governing *in rem* admiralty proceedings also provides that a party may bring an action *in rem* to enforce a maritime lien. Supplemental Rule C also provides that "a party who may proceed in rem may also, or in the alternative proceed in personam against any person who may be liable." *Id*. However, the advisory notes to the rule clarify that "an action in rem may be brought to enforce any maritime lien, and no action in personam may be brought when the substantive law imposes no personal liability." Indeed, the maritime lien is a special security device that accompanies in personam liability – the maritime lien is not, itself, the creator of personal liability. *Dowell Div. V. Franconia Sea Trans., Ltd.*, 504 F. Supp. 579, 581 (D.C.N.Y. 1980) ("The plaintiff also has the option of bringing an in personam action against any party that is directly liable in contract, tort, or some other substantive law, and a shipowner may be such a party. In the absence of a separate basis of substantive liability, however, the shipowner cannot be held personally liable to the plaintiff merely because a maritime lien has come into existence."). Accordingly, Hurley's Complaint does not state a claim to enforce a maritime lien against the Casino.

        **3.**        **Hurley Can Maintain An FLSA Claim Against the Casino**

Hurley's final available claim is an FLSA action against the Casino directly. Here, Hurley states a viable claim. The FLSA provides employees with a claim against their employers where they have worked in excess of 40 hours per week. Hurley pleads the following in his complaint: 1) Plaintiffs were employed by Majestic Star Casino; 2) that they worked in excess of forty hours per week; 3) that they were not compensated at a rate of one and one half

their regular rate; 4) that Plaintiffs were not employed as seamen; and 5) Plaintiffs did not perform services primarily as an aid in the operation of the vessel as a means of transportation, but rather performed non-maritime duties. (3rd Am. Cmp. at ¶3).

As discussed above, Hurley's allusions to being "ostensibly a seaman" appear to be included for the sole purpose of attempting to create a lien claim. The actual substance of his duties, though, suggest that under a *Harkins* analysis Hurley may be able to prove some set of facts to entitle him to relief from the Casino under the FLSA. Accordingly, under our liberal notice-pleading rules, we find that Hurley has stated a claim under the FLSA against the Casino.

### III.  CONCLUSION

For the foregoing reasons, the M/V Majestic Star's Motion to Dismiss [Doc. 29] and Majestic Star Casino's Motion to Dismiss [Doc. 37] are **GRANTED IN PART AND DENIED IN PART** as follows:

1) Plaintiff's claims against the M/V Majestic Star are **DISMISSED WITH PREJUDICE**.

2) Plaintiff's claim to enforce a maritime lien against Majestic Star Casino is **DISMISSED WITH PREJUDICE**.

3) Plaintiff's FLSA claim against Majestic Star Casino **REMAINS PENDING**.

**SO ORDERED.**

ENTERED: July 6, 2005

s/ Philip P. Simon
PHILIP P. SIMON, JUDGE
UNITED STATES DISTRICT COURT
